Abraham Goldman, doing business as the Broome Printing House, seeks a solidary judgment against the General Supply Company, a commercial partnership, and its individual members, for the sum of $178.42 — subject to a credit of $15 — said to be due for printing services rendered and merchandise sold and delivered to said partnership. It is alleged that the individuals composing the partnership are Joseph Gaydica and Martin T. Lewis.
The joint answer of the partnership and its members is in the form of a general denial.
There was judgment below in favor of the plaintiff and against the General Supply Company, Martin T. Lewis and Joseph Gaydica, jointly, severally and in solido, as prayed for. Gaydica alone has appealed.
We gather from the record and from the argument of counsel that Gaydica's denial of responsibility is based on the fact that he ceased to be a member of, or interested in, the partnership on and after May 28, 1940, at which time, it is urged, he transferred whatever rights, title and interest he might have had to Martin T. Lewis, his copartner. It is further contended that when Gaydica severed his connection with defendant partnership it did not owe any amount to plaintiff, on account or otherwise.
It appears that on May 4, 1940, Gaydica and Lewis, by act under private signature, entered into a partnership agreement. This partnership was formed to operate the business then being conducted under the name of the "General Supply Company", the agreement stipulating the retention of the same commercial name, and with Lewis in active charge as general manager. During the existence of the partnership it is not disputed that Gaydica participated and was actively engaged in the management and conduct of all firm transactions. The record further shows that on May 28, 1940, Gaydica and Lewis executed a notarial act dissolving the partnership by mutual consent, Lewis purchasing all of Gaydica's rights and interests therein and assuming the payment of all existing debts. This act of dissolution was not placed of record nor was public notice thereof given to the creditors or other interested parties. *Page 779 
Plaintiff testified that on or about May 10, 1940, he received an order from the General Supply Company for a certain quantity of printed labels and, in connection therewith, was handed by Gaydica a check of $15 to be applied "on account"; that the required number of "cuts" for the printing of the labels were ordered from the Crescent City Engraving Company, which were in turn delivered to plaintiff on May 22 and June 6, 1940, respectively; that the labels so ordered were printed from these "cuts" and then delivered to the defendant firm between the dates of June 18 and June 28, 1940, the dray receipts acknowledging their acceptance and delivery being signed by Lewis for and on behalf of defendant partnership.
Lewis testified that the goods were manufactured for and delivered to the defendant partnership and that they were ordered by him for its account, there being "no doubt", as he expressed it, that the merchandise was ordered by and supplied to the partnership.
Gaydica's testimony is to the effect that he paid plaintiff the sum of $15 to cover the full cost of the "cuts", from which certain vinegar labels were to be printed; that he has no knowledge of any orders having been given to plaintiff, and that the orders for the merchandise and printing in question were undoubtedly given after he had severed his partnership connections.
We are convinced that plaintiff supplied to defendant firm the merchandise and printing services, the value of which is being sued for, under an order given by Lewis, its general manager, for the benefit of, and to serve the purposes of the partnership, for which a payment on account was made in due course. The fact that the merchandise was delivered subsequent to the date on which Gaydica severed his connection with the partnership does not relieve it, nor him, from responsibility for the debt created. Nor does the fact that the sale and disposal by Gaydica of his interest in the partnership operate as a dissolution and liquidation of the partnership, thereby relieving it from liability. In the case of Posner v. Little Pine Lumber Company et al., 157 La. 73, 102 So. 16, 17, the Supreme Court said: "If the position assumed * * * be legally correct, then every time one partner disposed of his interest in a partnership to his copartners it would constitute a sale of an interest in specific property, and operate as a dissolution and liquidation of the partnership. Such is not the law."
There is no testimony whatever to the effect that any notice of an actual dissolution of the partnership was ever given to plaintiff, or anyone else, save an intimation of that fact which might be gleaned from a conversation had between the plaintiff and Gaydica sometime during the month of June, 1940, wherein the latter, in the course thereof, stated that he was "pulling out". The written act of dissolution, confected on May 28, 1940, was never recorded, nor was any public notice given of that fact.
It appears that there was not a settlement of the partnership affairs. After May 28, 1940, the business was continued under the name of General Supply Company without change or interruption. There was no change of location, and it appears that goods were sold and delivered in the name of the partnership long subsequent to the date of delivery of the merchandise for which this suit is brought.
In view of the foregoing facts, when plaintiff delivered the merchandise manufactured under the order previously given, in regular course of business dealings, he had the legal right to assume, without knowledge to the contrary, that the General Supply Company was continuing its operations as a partnership and that Gaydica's status as a member thereof was unchanged. Plaintiff, not having received any notice or intimation, directly or indirectly, of a dissolution of the partnership, and having in good faith, as has been shown, manufactured and supplied the merchandise called for by the order previously accepted, for which a payment on account is shown to have been made, the partnership and its individual members cannot now be heard to urge, in good conscience, an avoidance of solidary liability as is here presented.
In Fowler Commission Company v. Gray Keener et al., 16 La.App. 167, 133 So. 470, after considering the question in the light of facts very much stronger, from defendant's point of view, than those in the case at bar, it was held that, in order for a retiring partner to escape liability for merchandise bought in the firm name after his alleged retirement, actual notice of the retirement must have been given to the seller. See, also, Marquette Cloak Suit Company *Page 780 
v. Netter Meyer et al., La.App., 151 So. 820, and authorities there cited.
We see no reason to disturb the judgment of the court below.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.